v. John Bell Edwards et al. Mr. Moore, you may proceed. Thank you very much. It's truly an honor to be here and to represent Pastor Spell and Life Tabernacle Church in this case that I would say is of infinite importance, not only to them but to our country as well. As you know, we have alleged violations of the First Amendment of the United States Constitution, the Establishment Clause, Re-Exercise Clause, Freedom of Speech, and Assembly Clause. I thought I would begin by quoting James Madison, who was the chief architect of our Constitution and the author of the First Amendment. In his memorial remonstrance, he said something that's relevant to this case today. He said, It is the duty of every man to render the Creator such homage and such only as he believes acceptable to him. This duty is precedent in both order of time and degree of obligation to the claims of civil society. For any man can be considered as a member of civil society, he must be considered as a subject of the governor of the universe. And if a member of civil society who enters into any subordinate association must always do it with the reservation of his duty to the general authority, much more must any man who enters any particular civil society do it with the saving of his allegiance to the universal sovereign. Then he said this, We maintain, therefore, that in matters of religion, no man's right is abridged by the institution of civil society, and religion is wholly exempt from its cognizance. Now, what he was saying there basically is a jurisdictional term that said religion is is very important to me because it was attached to the first case in which they argued the Establishment Clause before the United States Supreme Court. Before we get into the Establishment Clause issue, could you just specifically say why your request for injunctive relief is not moot and why your claims for non-injunctive relief would achieve nothing other than a remand for consideration in light of the Supreme Court's Roman Catholic Diocese case? Yes, sir. Those two questions, why the injunctive relief isn't moot and why other relief wouldn't be decided in the first instance by the District Court now with the benefit of Roman Catholic Diocese. The injunctive relief has never been moot because we're contesting the absolute any restriction on church assembly. That's the first thing. Secondly, one second, the injunctive relief has never been moot because you're contesting the absolute any restriction. Any restrictions yes, sir. That's the first reason. But do you dispute that the latest governor orders lift all restrictions on occupants and limits? But the injury is a completed injury. Under the case of Isaac Bunim versus Przewski, which just came out in March of 2021, it said that once a completed injury, a violation of constitutional rights occurs if you have nominal damages. But that's getting to the nominal damages argument. I thought in the reply brief on page two, you said there's no live claim for injunctive, right? We have no live claim for a permanent injunction at this. That would be on the end of the case. You would seek a permanent injunction to have this constitutional violation stop in the future. But I thought that when the district court dismissed the whole case, that the district court is not giving injunctive relief either. You know, the court already determined about preliminary injunction, and now we're dealing with permanent. So we have to do something on the permanent injunction at this stage because it's been dismissed the injunctive relief. Don't we? I mean, or else we don't do anything and there is no injunctive relief left. Well, we don't ask for the permanent injunction to the end of the case. So are you asking for a permanent injunction in this case or not? Yes, ma'am. We will in the future. We will in the future. Okay. Can you please help us? What specifically were your clients, how were they treated differently? It says that the malls were open and department stores. Can you give us examples from the record of how your clients were treated differently? This is not, our position is not that we're treated differently. We were treated differently, but that's not the basis of the case. The basis of the case, this is a constitutional violation of the United States constitution. Equal protection isn't, when it's separate jurisdictions, as I will explain in my talk, that whether or not you're treated differently doesn't matter to the constitutional violation. That's the easiest way to establish a religious discrimination claim in like a leukemia or something when your rights are being treated. When you're treated differently than secular institutions, then that establishes it. But you don't want that relief if you're entitled to it? We're not arguing separate treatment here, different treatment, no ma'am. So if you could win on that, if you could win on well, it is a constitutional right under leukemia. It's just that you were treated differently than secular. If you could win on that ground, are you saying you would forfeit your win on that ground? I would say we're not arguing that. So I guess we would forfeit it if we're arguing a constitutional violation. Back to the question about mootness. I mean, if you're not arguing that and you would forfeit it. I understand that. So when you say you might or you will be seeking an injunction, is that because you would amend your complaint as to whatever the current order is? You would seek to amend it? Whether or not there's an order of the governor, we would still ask for a permanent injunction from him doing it again. I see. It's if he would do it again. If he would do it again. Yes, sir. And OK, you're probably intimately familiar with the Supreme Court spectrum of cases. Certainly in Roman Catholic diocese, the majority of the Supreme Court said, well, the governor has been changing his orders even this same week, and therefore it's not moot. But then we've got spell one, a published decision unanimous as to mootness, not capable of recurring. And then we've got the Supreme Court in Danville saying the same thing. If orders have to say a governor might reimpose them, it does nothing to the constitutional injury you suffered in the damages before the court. OK, so that gets us to the real question, which is the district court never had the proper framework to assess your damages. But I would have thought the claim that might get you nominal damages would be the one that Judge Elrod was just asking, which is a separate treatment, one a nondiscriminatory principle. You don't. That's not the claim you're pursuing. It's not the claim we're pursuing. So is it. Can then the other claim that was there, but it's a more difficult claim. It probably is that because Louisiana Constitution, the Constitution of Louisiana specifically says that you are. That's not the statute says that you cannot impugned or infringe on constitutional rights when you are doing emergency orders that other states like Texas doesn't have that in its in its law. So this is a unique thing in the law that says you can't infringe. That's that seems to be a claim that's in there. Is that the basis of your lawsuit that because the law specifically says that the governor can't take emergency actions that would impede or interfere with constitutional rights? The law already thought about emergency action when it said the governor can't, which a lot of the states don't have that in their law, and they were just kind of going in an emergency fashion. Is that your claim? No, ma'am, that is. Well, that's in your brief. That one is in your brief for sure. Well, that merely is an example of a constitutional right, but we're not claiming the state against the state law. This is a federal court and we're not claiming. We're just showing that the governor had no right to impede the constitutional. OK, in your 28, Mr. Moore, in your reply brief in your 28 J, it did seem to intimate that your position is any restriction on worship capacity. It does. Absolutely. And that's your argument. OK, how do you square that with South Bay to the Supreme Court's pronouncement in early 2020 where, let me finish my thought, where the Supreme Court didn't enjoin the California governor's limitation, 25 percent capacity limitation? How can you square that argument that any restriction on churches, quad churches, is unconstitutional? The issue wasn't presented to them, sir. One. Secondly, that's an injunctive relief. The court can rule on injunctive relief any way they wish. And two, in South Bay to the there was a portion of South Bay to where they set out specifically that they didn't restrict any appeals to the different levels. I could get my didn't. Yeah, I guess. Admittedly, it's all a shadow docket. My understanding is the Supreme Court is saying we are revising Jacobson. There is an unfettered executive emergency authority on public health crises. But the limitation from the free exercise clause is one of nondiscrimination. In other words, churches, you know, you still got to adhere to the fire code. Yes. OK, so government emergency authorizations to protect people if they're equally applied. Churches don't have some. You don't have to adhere to fire code restrictions. Fire code isn't part of the church doctrine, sir. I'm sorry. It's not part of the church doctrine. Matters of faith, articles of religion. It's not. But fire code often put capacity limits. So if it's related to a fire danger, you can't overcrowd the church. You don't write. The concept is the churches can't be singled out and burdened. It's not the churches are exempt from lockdown orders, mask orders. No, they've never been in the history of our country. A lot don't order lockdown order. So that is your argument, right? I'm just following up. Judge Jacobson's question. Yes. Your position is that the church is exempt from any of these orders and that all these churches that have been locked down around the country are entitled to damages. Basically, I'm not speaking for other cases, but what they presented the court, no case has gone before the Supreme Court on its merits as of this date. The theory is any restriction would entitle you to damages if you were restricted. Yes. Yes. Regardless of whether other entities restrictions on assembly. Yes. Any restrictions on assembly. Yes. Okay. How does that address a fire code restriction? Well, fire code in part of the things that are church doctrine and what's ecclesiastical decisions of the organization, the church itself. Fire code is something that's a first fire codes of law, isn't it? And what we've got here is no law. What we've got here is the governor's proclamations. Everybody knows from seventh grade civics class, the first year of law school, governors don't make laws. They do not make laws. Every case that has gone before the court on a valid law, valid neutral law of equal. Where in your brief to us, are you attacking the governor's authority? Non in that respect? Yes, sir. We did put that in our brief. It's very clear in a brief. The governor addressed that. It says that we're claiming. So if the legislature had oppressed this with presentation by camera, Lee, then it would be a law that you would have to adhere to. If it passed a law, yes. Yes, sir. No, sir. That would be a constitutional law. What's the base best case that non Supreme Court case that supports the argument you've now produced your claim to? I'll get to it. You'll get to it. Go ahead. The reason I said this is Everson was passed on February 10th, 1947. I've been involved in this fight for my whole life, but church state. And in fact, I was born the next day, February 11th. I know what all separation of church and state and what you go black and Alabama lawyer on the Alabama judge on the United States Supreme Court said about that. He said that, uh, First Amendment puts a wall between church and state. That wall must be kept high and impregnable. We cannot approve the slightest breach in Everson versus Board of Education. He said that he concluded his remarks by saying this. The establishment of a religion clause of the First Amendment means at least this. Neither a state nor the federal government can set up a church. Neither can force or influence a person to go to or remain away from church against his will. No person could be punished for church attendance or non attendance. In the words of Jefferson, the clause against steps from religion was intended to erect a wall of separation between church and state. That wall must be kept high and pregnant. That case has never been overturned. We're just an intermediate inferior court. What authority other than, um, then perhaps some views on natural law and in the founders statements, what authority do we have to act in the way that you would have us to act today? Well, because we're not the Supreme Court. We're just an inferior court. Understand that in the First Amendment, Congress shall make no law respecting and establishing religion, approving free exercise thereof. That's the Constitution. Under Article Six of the Constitution, all judges, no matter Supreme Court, intermediate court, or lowest court in the state. So what would you have us rule? I'd have you rule under Twombly and Iqbal that we presented a plausible claim to the district court. And that's what we're here about. It's dismissed on the merits. He said he reviewed the merits. We've addressed the merits in our writings. And he said dismissed. Thank you. That's the most relevant part of Everson versus Board of Education that I can talk about. What Black said was exactly this. You can't restrict assembly. Okay. Mr. Moore, you have saved time for rebuttal, sir. So because your red light is on. So you need to wrap it up. Is there some other argument that you need to fully open on? Ma'am, I've got, yes ma'am, I've got a whole bunch of arguments on the valid and neutral law of equal journal applicability that they say restricts us. And yet they quote out of Everson, or out of Employment Division versus Smith. And yet Employment Division Smith, written by Scalia, went further and said there are exceptions. One of them is assembly. It says it in his writing. And I could, I could quote that if you will. Okay. I think you can return to it on rebuttal because that is, that seems to be, if it's a neutral law and it's gone too far on, to hurt religion, then that seems to be similar to the Well, look, Amy, they didn't find a valid and neutral law. And in this case, we're saying there's not only not law, that there are cases that the First Amendment overcomes a valid and neutral law of journal applicability. Right, and we have that under RFRA and RLUIPA and, but I don't know that any such statute like that applies in this context, in this case, does it, often involves not only belief in profession, but the performance of or abstention from physical acts assembling with others for a worship service. He said it would be true, we think, though no case of ours has involved the point that a state prohibiting the free exercise of religion, if it sought to ban such acts, only when it would be prohibiting the free exercise of religion. That's what he said. And he said it's easy to envision such a case. Thank you. Thank you, Mr. Moore. You have saved time for rebuttal, sir. Okay, thank you. Miss, is it Mr. Butt, Butte? I was going to take his. What now? I was going to take his minute, but I couldn't finish. What now? I was going to take his minute. He's one of my co-counsel, but I. Oh, well, you can take his minute, but I don't know. He looks pretty eager. Well, I'll let him get up here and talk about it. Okay, thank you. Your Honors, I just really have one point that I'd like to emphasize. But first, I would like to say that we're not abandoning any claims that we under the religion clauses of the Bill of Rights. And that's really the question here. Did we present a plausible claim under the First Amendment? Now, when you have a pastor who has been told by the state that, no, you may not go to your congregation, assemble together, and preach the word of God, surely that's a plausible claim that the Establishment Clause and the Free Exercise Clause have been violated here. So we would like to get past the motion to dismiss stage. We'd like to get past the pleadings and bring this to trial and be able to present to a jury questions of immense importance as to the First Amendment of the Constitution. Thank you. Thank you. Thank you. And your team has saved time for rebuttal. You may proceed, Mr. Weiss. Good morning, Your Honor. And again, it's a great honor for me to appear again before this court. I'd like to start. No, it's, it's, are you, are you okay, sir? You look okay. Why don't we stop the time? Let's just start. Yeah, let's just start it back over, please. And we'll just take a breath, everybody, and start over. Thank you. I'd like to begin, Your Honor, by putting this case, the factual context of this case, in quick perspective. The amended complaint in this case that was filed way back in May, more than a year ago, put at issue, at most, only three of the Governor's proclamations, Proclamation No. 30, Proclamation No. 33, and Proclamation No. 58, which was the 25% so-called Phase 1 rule. The most recent of those, 58, expired on June 5th, 2020, more than a year ago. The Proclamation No. 33 were already ruled that those claims were held to be moot by this court, again, way back when, approximately a year ago. There has been no challenge to the court's ruling. It seems to me that either by law of the case, if you will, or common sense, if the claim for permanent injunctive relief a year later is equally moot. I don't know that that is a little bit of a leap for me, so can you just... Sure. I don't know, are there claims for permanent injunctive relief that would have been, that were in the amended complaint, that would survive if the case were not dismissed? Do you agree that there are or not? I agree that the plaintiffs alleged a claim for permanent injunctive relief, but for that claim to remain alive, it must not only have been justiciable, if you will, at the time that it was alleged, but this court must be able to grant some form of relief with respect to that claim. A few months ago, this church was relieved of all restrictions under the governor's proclamation, so what relief in the form of injunctive relief could this court now provide against a long ago expired proclamation in circumstances in which today there is no restriction whatsoever on the church? And the only thing that comes to mind is the idea that it's capable of evading review on a permanent... And like in an abortion situation or something, where they do grant those permanent injunctions, and so I just want to... If that works in that context, why would that not also work for the religious people in this context? Let me quickly, if I may, go through the package of regulations that conceivably apply. The first one is the one that was articulated by Judge Higginson in the big-time case, which is that the crux of the offense, if you will, remains active, if you will, in the current regulation. Well, that's clearly not true here, because unlike big-time, in which restaurants and bars were treated differently both in the expired proclamation and the one that was still in force, here any alleged lukumi discrimination that existed in 58 no longer exists today and hasn't for three months since these proclamations ceased to regulate religious behavior three months ago. But if the governor can just unilaterally issue one of these, get up, and like what if we're getting near winter and flu season, and it looks like tomorrow he's going to do it, do you think they have to start the whole process over even if they would have prevailed? That's the situation that could come back up. There are two different concepts here, if I may, Your Honor. One is the notion of litigation posturing and manipulation by a defendant, as was the case, by the way, in both Cuomo and the recent Tandon case decided by the Supreme Court. Both of those involved, if you will, eve of Supreme Court review, eve of appellate review, alteration of the proclamations in question. We have that opulent life, for example, in our, when y'all provided to us. Right. But again, here, these proclamations, as Judge Costa noted in Spell 1, have all expired in an orderly way. They're generally applicable. This is not a situation in which there's. Pandemic driven, not litigation driven. Correct. But in Tandon, the Supreme Court did caution about a constant threat of reimposition. Right. So wouldn't we be looking at the latest governor proclamation and see if there is language that says if these criteria are met, it triggers back, and then that would fit. Well, Your Honor, let me say this. I think that the constant threat language, which was used first in Cuomo and then in Tandon, has to be read as all Supreme Court cases have to be read and your decisions have to be read in the context of the facts of those cases and the facts of those cases Cuomo involved. Right. No, I know the facts. Heavy, heavy handed. Same week off. But let's talk about what the governor has said about it may be necessary if everything reverses itself instead of with all respect, that isn't what the proclamations say. I know what they have said since they started. There has been language that says if if things get worse, it may be necessary to revert to more restrictive. Spell one called that speculation. And your position here is it's even more speculation. My position is, yes, it's speculation. Number two, it's simply language in the proclamations that cautions the public for purposes of encouraging enforcement, that this is not a rule for all time. And it's very, very different. The notion, again, of constant threat has to be read in the context of the facts of those two cases. It can't simply turn on continuing legal authority to reimpose some restriction if the pandemic takes off again. Right. And if it did take off again, this court's recent decision, which we, again, cited in a rule 28 letter, makes it clear that the evading review prong of the capable of repetition yet evading review standard is not met when there are a variety of obvious interim tools available to anyone so affected to seek relief from the court. And here, let me just say I can go through the details with you. But if you look at the record in this case, you will see that time and time again, there have been proclamations in effect that the plaintiffs complain about and never sought any interim relief from this proclamations in effect for months at a time pending covid litigation where the state has lifted all restrictions that has not been said to be moved anywhere in the country. Yes, I am. And of course, this is a case that, in a sense, is adverse to our position. But the all restrictions are now gone, whether or not this is technically moot. We think it may be moot, but they cite the constant threat language that your honor just mentioned. Even if it isn't moot for what I would call prudential reasons, we see no reason to intervene by way of injunction in this case. That's the only case that I'm aware of that even comes close to the 7th Circuit earlier in the Pentecostal case had actually categorically said correct. Yeah, correct. So they were stepping back. But I guess I'm more interested with your time in why your brief suggests that we wouldn't remand as to the non injunctive relief claims. That seems to be a very hard argument to make. Okay, your honor. Let me simply I'd intended actually to start with the damage claims because it seems to me that they are both easily and summarily disposed of by the court. The official capacity claim, there are two species of damage claims here, arguably. It's a little hard to tell exactly what is alleged, but let's take first of all the individual capacity claims. It seems to me that this court will rarely if ever see a more compelling case for qualified immunity than this one. Shouldn't we send it back to the district court if it's going to be a qualified immunity? I don't think so. Not in this case. There's no briefing on it or anything. No, we briefed it. I mean, we briefed it elaborately. And in fact, at the time that Governor Edwards was promulgating again, we're not talking about an omnibus, if you will, complaint that attacks every proclamation from the beginning to now. We're talking about three proclamations, the last of which ceased to be in force in June of 2020, a year ago. And at that time, the original complaint attacked the 10-person limit. Yes. The amended complaint attacked the 25% capacity limit. Correct. Correct. So if they specified a period of time where their institution was treated differently than others, why doesn't that get to the heart of sort of RCD and South Bay? Because this court's repeated standard in terms of qualified immunity, as I'm sure I don't need to tell you, is whether the law was clearly established at the time and whether... Your position is Judge Jackson followed South Bay one. Roberts points out that Jacobson's still there, and it wasn't until RCD two weeks later that we have a revised revision or refinement saying, no, the tier's control. But that really, as Judge Elrod was just saying, is not the analysis that Judge Jackson has ever given this. Judge Jackson did not address qualified immunity, but I think, you know, what was clearly established at the time the governor promulgated these regulations was that his regulations were perfectly appropriate and that it was not an appropriate comparison to match up, if you will, churches with big box stores and grocery stores. The Chief Justice said as much for a majority in the South Bay case during the time when the most recent of these three regulations was still in effect. How could the court, how could any court possibly determine... Today, what was enforced then would not be deemed neutral. It would have to go through strict scrutiny, fine tailoring, no? We wouldn't dispute that, Your Honor. It all depends on what's essential though, right? Or what was essential. Again, no court, the Supreme Court has never held that a percentage limitation on attendance is unconstitutional or discriminatory. In fact, as the court knows, it upheld a 25% restriction in South Bay 2 in February of 2021, not long ago. And again, I think to look at Cuomo and Tandon, and again, I'm going to discuss qualified immunity once again, the fact that Tandon changes the law nine months, if you will, after another Supreme Court case tells the governor that... Tandon just simplified the analysis that came down. I guess it'll frustrate for you for me to ask this question, but do you know of any worship case that was decided before RCD that hasn't been remanded in light of RCD? Even if there's this glaring qualified immunity possibility, do you know of any case that has been dealt with at the appellate level the way you're suggesting? No, but I don't know of any appellate case that has dealt with a non-active, non-recent, year-old regulation of the kind that we're dealing here that came down at a point in time when the Supreme Court said that grocery stores and big box stores weren't appropriate comparators, that deference under Jacobson was virtually complete. And by the way, I should also mention this court's own opinion. Judge Duncan's opinion, multiple opinions in Abbott said essentially the same thing. It was clearly established at that point in time that the law supported what Governor Edwards did, not that it was to the contrary. I just want to make sure that I put before the court the other dispositive off-ramp here, which is insofar as these plaintiffs have alleged an official capacity claim, which would not be defeated by qualified immunity, squarely, squarely precluded by the 11th Amendment. And by the way, let me just say that... So why do you need to help me with why there aren't claims that are not qualified immunity claims? That was my question. It seems like they've been pled that it's against the entities themselves, not just against individuals. And so if it's pled, then there's things that are going to remain, even if we did your qualified immunity analysis. And I don't see that that was all gone into in great detail in the briefing. May I address that? Please do. First of all, in the plaintiff's proposed opposition to our motion of dismiss in the district court, this is in the record at page 1742, plaintiffs said this, Governor Edwards opened his motion to dismiss by arguing that the plaintiffs failed to state a claim for monetary damages against him in his official capacity as governor. Plaintiffs respond simply that they never raised such a claim in the first place. What about the other entities? The sheriff and the chief of police? The parish and the... It's another governmental entity. I'll let their counsel speak for themselves, Your Honor. But so let's assume, however, notwithstanding the written record disclaimer of the assertion of official capacity claim, that one somehow was alleged. The official capacity claim is nevertheless barred by the 11th Amendment because it is a retrospective claim for damages. And this court has said time and time again, including again, Judge Higginson recently in Williams against Reeves. And I might add that the en banc aspect of that case did not affect the prospective requirement that is articulated repeatedly by Judge Higginson in the case. This is a claim, a retrospective claim for damages that is flatly barred by the 11th Amendment. I mean, interesting you bring it up there. Part of why the dissent in the denial of en banc pointed out was that we had remanded for issues that looked like they were. Well, again, I think first of all, it's a retrospective claim for damages. As far as I know, again, I stand to be corrected, the 11th Amendment, unless there's been a waiver of sovereign immunity, flatly precludes a claim for retrospective damages against a state official such as Governor Edwards. And, you know, again, in our view, there's not a sufficient allegation in the complaint of an enforcement role for the governor, which is another just repeated fifth circuit. Could you respond to how your understanding of what the argument that was presented today orally was as distinct from the brief? Well, the the plaintiffs have made the argument from day one that the First Amendment is an absolute bar to any state regulation of the assembly of a congregation. And we've briefed that extensively. It seems to us that it's well established expressly that there is no absolute exemption of religion from neutral, generally applicable regulation of the kind we have here. Moreover, it's implicit, as the court pointed out in questions to counsel, it is implicit in all of the Supreme Court cases that have dealt with this issue and the Fifth Circuit cases that have dealt with these related issues that that the First Amendment doesn't absolutely bar any regulation of covid in a life and death situation in which I think it's important to point out. I'll just conclude with this point in which it is important to point out that this is not a victimless action, so to speak. If one attends church to express one's own point of view and contracts covid, then goes out into the community and exposes unsuspecting, unconsenting people who never were in that church to the disease. Certainly the law could not possibly absolutely immunize that type of behavior from government regulation. I have a couple questions. After Tandem v. Newsom, isn't it abundantly clear that the district court took the wrong approach by evaluating a value-based judgment of what was essential? It just, the analysis is wrong, isn't it? Your Honor, if one takes Tandem v. Newsom, which was heard by the court on interim relief, not after full briefing and argument, if one takes its pronouncements at face value, then certainly the most favored nation approach to is different from the law that existed in May and June of 2020. Judge Jackson's analysis is wrong under Tandem v. Newsom, right? No, I don't think it's wrong because I think Tandem... Rational basis and essential services analysis and the way it was done? I don't think there was any departure from neutrality or general applicability as those concepts were understood contemporaneously with the promulgation of these regulations. And I think that's a critical point. The court hasn't even remotely intimated that in an environment in which an early COVID environment, which is very different from Tandem, and by the way, as you know, Justices Alito, Gorsuch, and Kavanaugh have all expressed themselves in this notion of the evolving nature of the understanding. So you think it evolved and so they can't be held accountable. But I was asking if, as we sit today, is it wrong? And I think the answer is yes, isn't it? Not whether it was wrong then with what he knew and did the best he could. It's not an aversion on the good district court. It's knowing what we know now it was wrong. But knowing what we know now constitutionally in terms of free exercise analysis makes all the difference. Right, but it's wrong, and we have a chance to fix it. My question, though, is should we wait? Is there any, I mean, Fulton, I guess, could be out any second now. It could be. Are there any of the pending cases, Fulton or others, that might have a bearing on this? Not that I'm aware of that I could be helpful to you with, but again. It's probably, we'll know soon from the court on its other cases anyway. I would just, Judge Elrod, encourage the court in evaluating whether Tandem would indeed govern the analysis of this case of one year ago to take seriously into account our suggestion that the notion of First Amendment even-handedness must be viewed from the contemporary point of view of science and law. Okay, and Mr. Weiss, we have gone over, so I'm going to give the other side three extra minutes in its rebuttal to use however they wish with their people because they, so, and that's it. Thank you very much. Thank you. And we have first, though, Ms. Johnson for one minute, and then Mr. Thomas for one minute. Thank you, Your Honor. May it please the court. Sheriff Gautreaux will adopt the governor's actions. I, I have no objection to the constitutionality of these proclamations and the mootness, but the claims against the sheriff have abandoned in this appeal. The appellants argued in their reply brief that they didn't abandon their claims against the sheriff because they were charging all appellees with these constitutional violations, but their assignments of error in their entire brief are focused on the governor's actions and the language in the proclamations, and do not specifically address the sheriff and his individual capacity. Specifically, they argued in their reply brief that the sheriff had the authority to make policy as to whether to arrest people for violating the governor's proclamations, and they sued the sheriff in his official capacity to enjoin him from enforcing, or creating a policy and enforcing it, but that is not alleged in either complaint. That's not before the court on a 12B6 motion, which is considered on the pleadings only. Same thing for the individual capacity claims and the sheriff's qualified immunity assertion. It hasn't been established that the governor's proclamation, sorry, oh, I'm so sorry, thank you, um, the sheriff respectfully requests this court affirm the district court's granting of the motion to dismiss. Good morning, Your Honor. The chief adopts all the arguments of for the governor regarding the proclamations and their constitutionality. As just mentioned, our position is any claims against the chief have been abandoned as they were not handled within the brief. The only mention of the chief in the entirety of that brief was in the statement of the case saying that he issued the six summonses and the aggravated assault arrest. Our last comment would be there's no clearly established law saying that what the chief did at the time in trying to enforce the proclamations of the governor were anything more than the administrial functions of his job as the chief of police for the city of Central. And as such, he is entitled to qualified immunity based on the actions that he took trying to protect his citizenry. I don't think that there is anything that has been said in the pleadings, in the arguments of counsel, or anything else that does anything to show that what he did was anything other than the job that he had in front of him. Thank you. Mr. Wittenbrink, you've saved time for rebuttal. Thank you, Your Honor. First, I want to address some arguments that were brought up originally, Judge Higginson and Judge Elrod have both brought up. The arguments that we made in the brief were arguments in the alternative. In other words, we did make a statement saying we do believe that the way that this matter has been addressed, the way the free exercise has been addressed in the past, has not directly come to the point where we are now. We haven't had a case in the past where the Supreme Court has said that you can have a restriction on something as ordinary as assembling for church. Now, to put this, Judge Higginson asked a question about the fire code. So, you remember the language from Reynolds, from the remonstrances. When the church's activity falls outside or is against the public order, okay, so the fire code is simply, that's a public order sort of matter. It doesn't implicate theology. It doesn't implicate assembly or anything else. It's just simply a very, very plain vanilla regulation meant to keep the public order. These governor's proclamations all across the country have been emergency proclamations, and it's been contested all over the country as to whether or not they even had, many of them, had authority to do what they have done. Now, in context, where does the court give deference in the past, in history, in an emergency? You know, Abraham Lincoln tried to suspend habeas corpus, and that was ruled against. He ignored the rule, ignored the rule of law, but that was actually something that was done contra the Constitution. Youngstown Steel and Tube versus Sanders, same thing. Abraham Lincoln ordered the Secretary of Commerce to seize all the steel. The court did not let that stand. He said he didn't have the power to do that. Those were emergencies. He tried to contravene the Constitution, and the court said no. We in this country right now have a crisis of credibility in our institutions, and the judiciary is one of the last places we have that has credibility. So we would urge you that this particular point about just being able to assemble is essential. Justice Gorsuch did a really good job of stating it in that Roman Catholic versus Cuomo. He said the Constitution doesn't take a break during a pandemic. If it's an emergency, it doesn't take a sabbatical. You know, we are many, many months into this now, but the governor of Louisiana has refused to relinquish emergency power. Legislature has met three times. The legislature actually ordered him. You know, in 1974, Louisiana changed its Constitution. In the 1921 Constitution, the police power of the state was preeminent. Can you go back to the governor has refused to relinquish emergency power? That's correct. I was trying to bring that up. So when you change the Constitution in 1974, we brought it in line with the United States Constitution and made limitations on the powers of the state and the police state and the police power, excuse me, and made individual rights preeminent. That's that's the position more like the federal system. How has the governor manifest that he refuses to give up this power? Well, in a special session last year in October, the Louisiana legislature said the House of Representatives filed a resolution and said the emergency is over. That's according to the statute that gives the governor emergency power. The way that that was set up was that the legislature intended that in order for the governor to retain emergency power, both houses of the legislature were required to concur. So when one house of the legislature says we don't concur anymore, the emergency power is over, the governor is supposed to declare an end to the emergency and then talk to the legislature about how things go forward. Governor Edwards, how it's manifested in this case is that this governor has constantly and continually tried to retain power and retains in every proclamation the ability to go back and to say, if something happens, we're going to do this again. And because we're going to do this again with the approval of the legislature. Well, it should. It should. But right now, the governor has unilateral authority. We are 16. When he makes so so. I'm sorry, your honor. Did he veto that? He sued the legislature. He sued the legislature. There was a district court opinion that said that was unconstitutional for only one house to end it when that's the way the statute was set up. That's not that's not in effect. So it's not in effect. He's not going contrary to any legislature. Well, he actually is going contrary to the statute as it was enacted, your honor. The statute as enacted, the statute that gives him powers, the statute that gives the governor the power to act in an done after 9-11, excuse me, done in 1993. But the statute that gave him emergency powers to begin with said that, hey, either either side of the legislature can say this is enough. Emergency's over and make him talk to the legislature. They pulled that plug instead of complying. The governor said, I'm not going to comply and sued the legislature and was successful in getting a state district court judge to to kick that out. It went to the Louisiana Supreme Court, who said you didn't try the case. You don't have the facts. We need the whole case, all kinds of things, also all sorts of issues with the governor's authority. But that's that's correct. All that is brought up for your honors to understand that we do need a backstop. You know, when the when the governor can constantly come back and he's intended, he's shown by his actions that I understand the concerns. If you could just save a little time because you were given eight full minutes. Oh, my goodness. And I'd like you to address Mr. Weiss's point that we shouldn't remand because there is it is indisputable that there'd be qualified immunity. In other words, Judge Jackson ruled November 10. South Bay one is controlling law, clearly established law. The change doesn't occur until two weeks later, November 25th. How could it not be qualified? I mean, it's still not. It's still not. Because, Judge, if you remember, Judge Justice Gorsuch came back and dismantled that whole line of reasoning from Jacobson that Judge Jackson used. In other words, just dismantled. But what was the controlling law applicable to Judge Jackson on November 10? What would you point to? Well, on November 10, nothing after November 10. I would say it was Judge Jackson's duty to analyze Jacobson in the correct way in the way that Justice Gorsuch did. I would say that Justice Gorsuch later did, but the Supreme Court had not done in May in South Bay one. Well, that's correct. Now, they didn't have exactly the same circumstances that we have in Toronto. But they also, you know, South Bay one, it was a preliminary injunction. The judge denied our preliminary injunction. That was brought up here. But we still had the actual facts of the case and the things that the governor did. Do we need South Bay two to say that the law was clearly established that you couldn't treat religion worships lesser than departments? I don't think that you needed that. I don't think you need that. I think that's already clearly established law of this circuit. Well, what I would say, Judge, is that you don't need South Bay two to decide correctly. You don't need South Bay two to read the First Amendment. You don't need South Bay two to do the proper analysis. Sorry. What is the case? You know, I'm just a Louisiana civilian, Judge. We go back to the statutes and the words and the way that the way you don't have a case. That's the Judge Elrod's question is. I don't have a case. You don't have a case. Okay. Thank you very much. We appreciate the arguments today in this very interesting matter. Thank you very much. This case is submitted.